[No. 5,964.—In Bank.]

## C. J. HIDDEN v. D. M. JORDAN ET AL.

MESNE PROFITS—USE AND OCCUPATION.—A decree was made directing that the plaintiff pay into Court a sum of money, and that the defendant thereupon make a deed conveying certain land to the plaintiff, and also that he surrender possession thereof. *Held*, that the plaintiff could maintain an action for mesne profits for the period after said payment during which the defendant refused to surrender possession, although no deed was made pursuant to the decree.

ID.—DECREE—LEGAL TITLE.—MR. JUSTICE McKINSTRY, concurring, was of the opinion, that after such payment the decree operated to invest the plaintiff with the legal title.

APPEAL from a judgment for the plaintiff, and an order denying a new trial, in the Seventh District Court, for Solano County. DENSON, J.

The previous litigation referred to in the opinion of the Court will be found reported in 21 Cal. 92; 28 id. 301; 32 id. 397; and 39 id. 61.

*Wells & Coghlan*, for Appellant.

This is an action in the nature of recovery of mesne profits, and that we submit is decisive of the case, because the action for mesne profits pertains only to or is consequent upon the result of an action of ejectment; and also because, it being admitted that Jordan held the *legal title* subject to this trust, it

results that no one but Jordan had the right to claim the rents and profits until the determination of the trust.

This claim was, of course, subject to Jordan's liability to account as, or in the same manner as, a mortgagee in possession, as has already been settled in the different stages of this case. (*Burton* v. *Austin*, 4 Vt. 105; *Smith* v. *Benson*, 9 id. 38; *Wider* v. *Houghton*, 1 Pick. 87; *Mayo* v. *Fletcher*, 14 id. 525; Stearns on Real Actions, pp. 245, 360–366, 370.)

The best test is, could he maintain ejectment during this time? If not, how can he maintain this action?

*Wheaton & Scrivner*, for Respondent.

The plaintiff had established his right and title to the possession of the premises by judicial proceedings. Under those judicial proceedings, he had recovered the possession of the premises. After his right and title had become perfect to the possession of the premises, August 2nd, 1870, the defendants held the premises adversely to the plaintiff during an entire cropping season, from the fall of 1870 to the fall of 1871.

This brings us strictly within the common-law rule, and within the rule laid down in the very cases cited by appellants.

Ross, J.:

After a protracted litigation between the plaintiff Hidden and the defendant Jordan, in which the former sought to charge the latter with a trust in respect to certain real estate, a final decree was entered on the 4th of June, 1870, in the late Seventh Judicial District Court, whereby it was adjudged and decreed that Hidden pay to the clerk of the Court, for the use of Jordan, within sixty days from the date of the decree, the sum of $15,458.04, with interest thereon at the rate of seven per cent. per annum, from the date of the decree, and that thereupon the defendant Jordan execute to Hidden a good and sufficient deed of conveyance to the property; and that " upon the payment of the money aforesaid into Court by the plaintiff, for the use of the defendant aforesaid, the possession of said premises, with the tenements, hereditaments, and appurtenances, shall be forthwith surrendered and delivered up to said plaintiff " (Hidden),

etc.; * * * "and in default of such payment being made by the plaintiff, as hereinbefore decreed by him to be made, the trust herein shall be deemed closed, and the plaintiff's complaint herein shall stand dismissed out of this Court," etc.

On the 2nd of August, 1870, Hidden paid into Court, for Jordan, the full amount mentioned in the decree, with interest, the payment being made in currency. Thereafter, Hidden demanded of Jordan possession of the property, which was by the latter refused. The defendant Staples was then the agent of Jordan, and as such had charge of the property. He also refused to permit Hidden to take possession, but, on the contrary, leased the premises for the cropping season commencing in the fall of 1870, and extending to the fall of 1871, to the defendant Pierce and one Cannon, who, together with Staples, kept Hidden out of possession during the term of the lease. Both Staples and Pierce had notice of the litigation and decree.

In January, 1871, Hidden applied to the District Court, on affidavits, for a writ of assistance to place him in possession of the property, which application the Court denied; and in the same month held that the payment made by Hidden was insufficient, and thereupon made an order "declaring the trust hereinbefore determined by the Court, and every right of action on the part of the plaintiff, closed, determined, and at an end, and the defendant D. M. Jordan to be forever discharged therefrom, and no longer amenable thereto." March 15th, 1871, Hidden appealed to the Supreme Court from each of these orders, which appeals resulted in a reversal of both orders —the remittitur from the Supreme Court being issued January 27th, 1872.

September 18th, 1873, the present action was instituted by Hidden against Jordan, Pierce, and Staples, to recover the value of the use and occupation of the premises from the fall of 1870 to the fall of 1871, which the Court below found to be $1,764, and for which it gave the plaintiff judgment.

We think the judgment right.

The mesne profits accruing to the plaintiff previous to the entry of the decree of June 4th, 1870, could have been, and could *only* have been, allowed him in the action in which he

established the trust.   He could not afterwards maintain an action for such profits.   (*Heinlon* v. *Martin*, 53 Cal. 341.)

But the decree of 1870 finally determined the rights of Hidden and Jordan in relation to the land, and adjudged, among other things, that upon the payment by Hidden to the clerk of the Court, for Jordan, of the sum named, with interest, within the designated time, Hidden should be forthwith entitled to the possession of the property.   Hidden made the payment in accordance with the decree, and thereupon became entitled to the possession of the property, and to the enjoyment of its use and occupation.   All of the present defendants knew of these rights on the part of Hidden, and, instead of respecting them, detained the possession from him to his damage in the sum found by the Court below.   For the damage they thus occasioned plaintiff, it is but just that they should respond, and we know of no rule of law that prevents their being made to do so.

The cases referred to by counsel for appellants are altogether unlike this.

The judgment and order are affirmed.

MORRISON, C. J., THORNTON, J., and MYRICK, J., concurred.

McKINSTRY, J., concurring:

I concur.   If, on the payment by Hidden of the amount mentioned in the decree of the 4th of June, 1870, Jordan, in obedience to that decree, had conveyed the legal title to Hidden, then (even had the decree not contained the clause requiring the delivery of the possession to Hidden) the latter would have been entitled to recover the possession in an action of *ejectment*, together with damages by way of *mesne profits* from the date of the conveyance to the execution of the judgment in ejectment.   Inasmuch as the decree provided for the surrender of the possession by Jordan, and such surrender, in fact, took place after the reversal of the order denying a writ of assistance, the plaintiff is entitled to recover mesne profits for the period during which he was wrongfully kept out of possession by Jordan and those holding under him, after the conveyance to him of the legal title.   Plaintiff's right to *mesne profits* did

not depend upon the recovery of the possession in an action at law, but was sufficiently made out—as to trespass for mesne profits *after* the decree and the execution of the deed under it— by proving the existence of the decree, and the proceedings under it, which placed the *legal title in him,* and which, at the same time, directed that he be placed *in possession,* the last provision securing to him all that he could have recovered in *ejectment.* Every reason which would make a recovery in ejectment evidence of his right to a judgment for mesne profits for a period during which the possession should be withheld *after* such recovery, applies to a *decree* which provides for a transfer of the legal title to him, and, at the same time, accords to him the possession.

If it be suggested that the case does not show that the legal title has as yet been conveyed to Hidden by Jordan, the response is ready. The decree does not in terms provide, that if, on payment of the money by Hidden, Jordan shall refuse to execute the deed, the decree itself shall operate as a transfer of the legal title, but I think it may fairly be so construed. The decree requires a deed by Jordan, but neither Hidden's possession nor his right of possession is made to depend upon the execution of the deed. On the contrary, the District Court declared: " Upon the *payment of the money* aforesaid into Court by the plaintiff, for the use of defendant, as aforesaid, the possession of said premises, with the tenements, hereditaments, and appurtenances, *shall be forthwith* surrendered and delivered up to said plaintiff Hidden." Reading the decree as a whole, it is apparent that it was intended that, upon the payment of the money, Hidden should become the legal owner.

The decree, and the payment under it, placed the legal title in plaintiff, and the court of equity, instead of turning him over to his action at law to recover the possession, decreed that he be put in possession. But whether the present can be called technically an action of " *trespass for mesne profits* " or not, it is an action to recover damages for the wrongful withholding after judgment of the possession of lands of which plaintiff has been adjudicated the owner, legal and equitable, and of which he has been placed in possession by a competent court. I entertain no doubt that plaintiff is entitled to recover as damages

the value of the use and occupation for the period between the date when the judgment took effect, by the payment of the sum therein mentioned, and its complete execution by the delivery of the possession to him.

McKee, J., dissented.